# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

RICK FITZER, individually and    *
on behalf of others similarly    *
situated,    *
   *
     Plaintiff,    *         CV 209-169
   *
     v.    *
   *
AMERICAN INSTITUTE OF BAKING;    *
EUGENE HATFIELD; and AIB    *
INTERNATIONAL, INC.,    *
   *
     Defendants.    *

## ORDER

This matter comes before the Court on a fully briefed Motion to Dismiss filed by Defendant American Institute of Baking ("AIB"), see dkt. nos. 48-49, 55, 60, and Motion Regarding the PCA Settlement Procedures filed by Defendants AIB International, Inc. ("AIBI") and Eugene Hatfield ("Hatfield"), see dkt. nos. 50-51, 56, 59. For the reasons that follow, AIB's Motion to Dismiss (dkt. no. 48) is **GRANTED**. AIBI and Hatfield's Motion Regarding the PCA Settlement Procedures (dkt. no. 50) is **DENIED in part** and **DISMISSED in part as premature**: the Motion is **DENIED** to the extent that it seeks a dismissal of Plaintiff's claims on grounds of waiver and mitigation or, in the alternative, an order reducing Plaintiff's potential damages

award, and it is **DISMISSED as premature** insofar as it requests a denial of class certification at this time.

**BACKGROUND**

Plaintiff Rick Fitzer ("Plaintiff"), a resident of Chatham County, Georgia, allegedly got salmonella poisoning after ingesting food products containing peanut butter supplied by Peanut Corporation of America ("PCA"). Dkt. No. 1, Ex. A ("Pl.'s Compl."), ¶¶ 1, 5-9. AIBI had contracted to inspect PCA's food-production plants, and Hatfield, an AIBI employee, conducted the audit of the PCA facility in Blakely, Georgia, that is alleged to have produced the contaminated peanut butter. Id. at ¶¶ 5, 14. On September 2, 2009, Plaintiff, individually and on behalf of a putative class of similarly situated persons, filed suit against AIBI and Hatfield and AIBI's affiliate, AIB (collectively, "Defendants"), alleging that they negligently performed the inspection or audit at the PCA facility. Id. at ¶ 13.

Notably, Plaintiff purports to represent two classes of persons allegedly affected by Defendants' inspection: (1) "[a]ll persons who suffered personal injuries, including death, as a result of peanut products produced at the Peanut Corporation of America[] plants"; and (2) "[a]ll persons who suffered non-personal injury damages such as: a) loss of peanut products purchased because of [a] recall and costs associated with

complying with the recall[,] and b) medical check-ups for actual and/or suspected ill health effects from the contaminated food products." Id. at p. 4. Additionally, Plaintiff alleges that affiliates AIB and AIBI are foreign corporations that share a principal place of business in Manhattan, Kansas. Id. at ¶¶ 2, 13. Plaintiff also asserts that AIB "is responsible for setting out the parameters of the training and work to be done by AIBI inspectors/auditors." Id. at ¶ 13. Plaintiff claims that because "[t]he scope of the inspection set out for . . . Hatfield on the PCA facilities was absolutely deficient," AIB may be held liable for the damages allegedly suffered by Plaintiff and the proposed class members. Id.

In their Report filed with the Court pursuant to Federal Rule of Civil Procedure 26(f), the parties recognized that "this case will involve a class certification motion filed by the Plaintiff, which Defendants will oppose." Dkt. No. 27 ("Rule 26(f) Report"), p. 3. The parties agreed that the Court's ruling on such motion will have a "dramatic effect" on this case, and that "[t]he discovery necessary to support and oppose the class certification motion will be extensive." Id. On May 13, 2010, the Court stayed this case pending the completion of settlement procedures overseen by the Bankruptcy Court for the Western District of Virginia regarding personal injury claims against PCA based on the salmonella outbreak. Dkt. No. 34. The

Court lifted the stay on July 2, 2015, and ordered the parties to conduct discovery and file any dispositive motions concerning only the limited issues of personal jurisdiction over AIB and the effect of the PCA bankruptcy settlement on Plaintiff's and the putative class members' claims. Dkt. No. 41, p. 2. Accordingly, on November 2, 2015, AIB filed its Motion to Dismiss for lack of personal jurisdiction (dkt. no. 48), and AIBI and Hatfield submitted their Motion Regarding the PCA Settlement Procedures (dkt. no. 50), which are now ripe for review.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain both "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)-(2). A responding party thus may move to dismiss the complaint based on a lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2) ("Rule 12(b)(2)"), or a "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). A responding party may raise similar arguments in a motion for judgment on the pleadings filed "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c) ("Rule 12(c)").

## I. Rule 12(b)(2) Motion to Dismiss

When a district court does not conduct an evidentiary hearing on a motion to dismiss under Rule 12(b)(2), the plaintiff need only allege sufficient facts in the complaint to establish a prima facie case of personal jurisdiction over a nonresident defendant. Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990) (citing Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988); and Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988)). However, if the defendant challenges personal jurisdiction with affidavit evidence in support of his position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). The plaintiff must "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." Polski Linie Oceaniczne v. Seasafe Transp. A/S, 795 F.2d 968, 972 (11th Cir. 1986) (quoting Bloom v. A.H. Pond Co., 519 F. Supp. 1162, 1168 (S.D. Fla. 1981)); see also Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996) ("When a defendant raises through affidavits, documents or testimony a meritorious challenge to

personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." (quoting Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990))).

The court, in turn, must accept the facts in the plaintiff's complaint as true, to the extent that they remain uncontroverted by the defendant's affidavits. Cable/Home Commc'n Corp., 902 F.2d at 855. In addition, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Diamond Crystal Brands, Inc., 593 F.3d at 1257 (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).

## II.  Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint in setting forth a claim to relief. See Fed. R. Civ. P. 12(b)(6). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (interpreting Fed. R. Civ. P. 8(a)(2)). To be plausible on its face, a complaint must set forth enough

AO 72A
(Rev. 8/82)

facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In evaluating a motion filed pursuant to Rule 12(b)(6), a court must "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Ordinarily, a court's review on dismissal is limited to the factual allegations on the face of the complaint. See Iqbal, 556 U.S. at 678. If a court is presented with matters outside the pleadings on a motion to dismiss, the motion is converted into one for summary judgment. Fed. R. Civ. P. 12(d). However, there are certain instances in which a court may consider matters outside the pleadings without transforming a motion to dismiss into a summary judgment motion, see Davis v. Self, 547 F. App'x 927, 929 (11th Cir. 2013), including, for example, that a court may consider facts that are subject to judicial notice, see Fed. R. Evid. 201(a)-(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000) (documents from court adjudications are public records subject to judicial notice).

## III. Rule 12(c) Motion for Judgment on the Pleadings

Judgment on the pleadings "is appropriate when there are no material facts in dispute, and judgment may be rendered by

considering the substance of the pleadings and any judicially noticed facts." Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)); see also Fed. R. Civ. P. 12(c). A court reviewing a motion for judgment on the pleadings under Rule 12(c) thus applies the same standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim, "accept[ing] the facts alleged in the complaint as true and draw[ing] all inferences that favor the nonmovant." See Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998) (citing Slagle v. ITT Hartford, 102 F.3d 494, 497 (11th Cir. 1996)). If, upon reviewing the pleadings, it appears that a plaintiff "would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." See Horsley, 292 F.3d at 700 (citing White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir. 1999)).

## DISCUSSION

### I. AIB's Motion to Dismiss (Dkt. No. 48)

AIB moves the Court to dismiss Plaintiff's claims for lack of personal jurisdiction pursuant to Rule 12(b)(2). Dkt. No. 49. AIB contends that Plaintiff cannot satisfy Georgia's long-arm statute, as is required for the Court to exercise jurisdiction over the company, because he fails to show that AIB

has established minimum contacts with this State. Id. at pp. 4-10. While conceding that its subsidiary, AIBI, does business in Georgia, AIB maintains that its ownership of AIBI alone is insufficient to confer jurisdiction over it, and that the separate and independent nature of the companies precludes imputing AIBI's contacts with this State to AIB. Id. at pp. 9-10. Even if jurisdiction were appropriate under the Georgia long-arm statute, AIB asserts, exercising jurisdiction over it would fail to comply with constitutional due-process guarantees. Id. at p. 10.

In support of its Motion, AIB has submitted the Declaration by Paul E. Klover ("Klover"), AIB's Secretary and Treasurer at the time that the alleged events took place. Id. at Ex. A ("Klover Decl."), ¶ 1. In the Declaration, made under penalty of perjury, Klover states, in pertinent part:

>     3.    AIB is a not-for-profit organization committed to food science education and research.
>
>     4.    AIB is a not-for-profit organization organized in the State of Illinois with its principal place of business in Manhattan, Kansas.
>
>     5.    AIBI, a for-profit corporation, is an independent subsidiary of AIB. AIBI is in the business of, among other things, performing food safety audit services for its clients.
>
>     6.    AIB does not own property in Georgia. It has no offices, agents, employees, mailboxes, telephone listings, or bank accounts located in Georgia.

7.   AIB is not registered to do business in Georgia.

8.   AIB does not maintain registered agents in Georgia and does not pay corporate taxes to Georgia.

9.   AIB does not set the parameters for AIBI inspections.  AIBI writes and publishes its own food safety audit standards based on the Food and Drug Administration's Good Manufacturing Practices (GMP) protocols, CODEX standards, and industry best practices.

10.  AIBI-not AIB-provides all inspection protocol and field training for AIBI's food safety auditors.

Id. at ¶¶ 3-10.

Plaintiff urges the Court to deny AIB's Motion and exercise jurisdiction over this Defendant, arguing that its business activities in Georgia satisfy both the State long-arm statute and due-process requirements.  Dkt. No. 55, pp. 4-8.  Plaintiff maintains that AIB itself "has continuously transacted business in Georgia since before the negligent PCA plant inspections," by providing food-safety education classes, performing safety inspections, having its subsidiary (i.e., AIBI) registered in this State, and authoring and publishing food-safety manuals that it intended its inspectors to use in this State.  Id. at p. 6.  Plaintiff further submits that the Court should impute AIBI's minimum contacts to AIB, because "AIBI lacks separate interests from AIB and appears to function solely for AIB's benefit."  Id. at pp. 7-8.  According to Plaintiff, AIB authored

and published the safety standards to be used by its subsidiary and sent its affiliated inspectors to this State. Id. at p. 7.

Attached to Plaintiff's Response are several documents purportedly proving these assertions:

- a screenshot of the Kansas Secretary of State Web site dated November 25, 2015, showing that AIB and AIBI share the same registered agent and registered office, id. at ex. A, pp. 1-2;

- a printout of the "About" page of the Web site of Baking Industry Sanitation Standards Committee ("BISSC")—a company that certifies bakery equipment meeting specific sanitation standards—which contains a section entitled, "BISSC and AIB" stating that BISSC is a "wholly-owned subsidiary of AIB International" and that BISSC's "third-party verification" program involves an inspection by "[a]n AIB representative," as well as another section indicating that it is AIBI that coordinates the scheduling and billing of third-party verifications, id. at ex. B;

- a printout of an electronic copy of AIB's Annual Report filed with the Kansas Secretary of State on May 1, 2009, which shows that AIB was owner of both AIBI and BISSC, id. at ex. C;

- a printout of what appears to be the Web site of American Society of Baking separately listing AIB and BISSC as

organizations that provide assistance and advisement regarding the standards for baking sanitation, <u>id.</u> at ex. D;

- a printout of a page on bakingbusiness.com with the heading, "AIB International 2009" and the subheading, "AIB Annual Update," in which an AIBI representative largely discusses AIBI's performance and plans for improving its food-safety system—including implementing a "completely updated Consolidated Standards for Inspection"—but in one instance refers to AIB as having "established its food safety inspection programs as a benchmark of quality," <u>id.</u> at ex. E;

- a copy of the AIBI Food Safety Audit Report setting forth the results of Hatfield's inspection of the PCA facility and citing, in part, "the criteria set forth in the <u>AIB Consolidated Standards for Food Safety</u>" as the basis for his conclusions, <u>id.</u> at ex. F, pp. 1–2;

- three documents including (1) AIBI's Seminar Calendar for 2016, (2) an article in <u>AIB Update</u>'s March/April 2013 publication discussing food-safety planning and advertising training courses to which it refers interchangeably as "AIB International HACCP training" and "AIB's HACCP training," and (3) AIBI's "FS 360 Food Safety Evaluation" stating that it is an educational evaluation that "extends the scope of

the AIB Consolidated Standards" and directing all inquiries about food safety to AIB, id. at ex. G;

- a copy of Food Bank of Northeast Georgia's 2014 Annual Report indicating that it had partnered with AIB to implement a food-safety auditing program, was inspected by AIBI, and received a food-safety certification from AIB, id. at ex. H; and

- a printout of a September 20, 2002, press release on what appears to be the Web site of Dawn Food Products, Inc. reporting that the company had received a "Superior Rating" in its annual inspection conducted by AIB, id. at ex. I.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." United Techs. Corp., 556 F.3d at 1274 (citing Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166 (11th Cir. 2005)).

In construing a state long-arm statute in a personal jurisdiction analysis, the court must interpret the statute as would the state's Supreme Court. See id. The relevant portions of Georgia's long-arm statute state:

AO 72A
(Rev. 8/82)

A court of this state may exercise personal
jurisdiction over any nonresident or his or her
executor or administrator, as to a cause of action
arising from any of the acts, omissions, ownership,
use, or possession enumerated in this Code section, in
the same manner as if he or she were a resident of
this state, if in person or through an agent, he· or
she:

(1) Transacts any business within this state . . . .

O.C.G.A. § 9-10-91.  To exercise personal jurisdiction over a

nonresident who transacts business within Georgia, the following

requirements must be met:

first, the nonresident must have purposefully done an
act or consummated a transaction in Georgia; second,
the cause of action must arise from or be connected
with such act or transaction; and third, the exercise
of jurisdiction by the courts of this state must not
offend traditional fairness and substantial justice.

Gateway Atlanta Apartments, Inc. v. Harris, 660 S.E.2d 750, 757

(Ga. Ct. App. 2008) (citing Robertson v. CRI, Inc., 601 S.E.2d

163, 163 (Ga. Ct. App. 2004)).

Georgia courts broadly interpret the first prong—a

purposeful act or consummation of a transaction in Georgia—as

neither requiring the nonresident defendant's physical presence

in Georgia nor minimizing the importance of his intangible

contacts with this State.  Innovative Clinical & Consulting

Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 355

(Ga. 2005).  As such, a court must consider the nonresident

defendant's "mail, telephone calls, and other 'intangible' acts,

14

though occurring while the defendant is physically outside of Georgia." Diamond Crystal Brands, Inc., 593 F.3d at 1264 (citing Innovative Clinical & Consulting Servs., LLC, 620 S.E.2d at 355-56); see also Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 739 (Ga. Ct. App. 2006) ("[A] single event may be a sufficient basis for the exercise of long arm jurisdiction if its effects within the forum are substantial enough even though the nonresident has never been physically present in the state." (citing Shellenberger v. Tanner, 227 S.E.2d 266, 266 (Ga. Ct. App. 1976))). The second prong of the personal-jurisdiction analysis adds that the act or transaction must give rise or have some connection to the cause of action, such that the first and second prongs together determine whether the nonresident has established minimum contacts with the State. Gateway Atlanta Apartments, Inc., 660 S.E.2d at 757. By contrast, the final "due process" prong "requires that the nonresident have performed purposeful acts to tie itself to Georgia, and these minimum contacts 'may not be merely random, fortuitous, or attenuated.'" Id. (quoting Home Depot Supply v. Hunter Mgmt., 656 S.E.2d 898, 898 (Ga. Ct. App. 2008)).

Notable here is that where a parent corporation and its subsidiary are separate and distinct corporate entities, one's minimum contacts with a forum state may not be attributed to the other for personal-jurisdiction purposes. Drumm Corp. v.

*Wright*, 755 S.E.2d 850, 854 (Ga. Ct. App. 2014) (citing *Vogt v. Greenmarine Holding, LLC*, No. CIV.A.1:01-CV0311JOF, 2002 WL 534542, at *4 (N.D. Ga. Feb. 20, 2002)). However, "if the parent's control over the subsidiary's activities is so complete that[] the subsidiary is, in fact, merely a division or department of the parent," then the parent may be viewed as doing business through its subsidiary in the forum state, such that it is subject to the jurisdiction of that state's courts. *Id.* (quoting *Sol Melia, SA v. Brown*, 688 S.E.2d 675, 675 (Ga. Ct. App. 2009)). To assert jurisdiction over a parent company based on the presence of its subsidiary, Georgia courts generally require "proof of control by the parent over the internal business operations and affairs of the subsidiary." *Id.* (quoting *Vogt*, 2002 WL 534542, at *4). "The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." *Id.* (quoting *Vogt*, 2002 WL 534542, at *4). Activities consistent with common ownership—and thus insufficient to confer jurisdiction over the parent—include "monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures." *Id.* at 854 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

AO 72A
(Rev. 8/82)

In the case at bar, the Court concludes that personal jurisdiction over AIB is lacking. Plaintiff initially pleads a prima facie case of personal jurisdiction over AIB in the Complaint, in alleging that it is affiliated and shares a principal place of business with AIBI, which contracted to inspect the PCA facility in Georgia; "is responsible for setting out the parameters of the training and work to be done by AIBI inspectors/auditors"; and specifically set out the allegedly deficient inspection that AIBI's employee, Hatfield, performed at PCA's Georgia facility. Pl.'s Compl., ¶¶ 2, 5, 13–14. Drawing all reasonable inferences in Plaintiff's favor, the Court could find on the basis of these facts that AIB's involvement in AIBI's inspections business entailed more than simply promulgating general policies and, instead, crossed into the realm of dictating its daily business operations. Such facts, if uncontroverted by other evidence, would be sufficient to obtain jurisdiction over AIB based on AIBI's business in this State.

However, AIB has submitted a sworn declaration explicitly denying or refuting each of Plaintiff's allegations with regard to its control over AIBI. The Klover Declaration states the following: (1) "AIB is a not-for-profit organization committed to food science education and research," while "AIBI, a for-profit corporation, is an independent subsidiary of AIB" and is

AO 72A
(Rev. 8/82)

"in the business of . . . performing food safety audit services for its clients"; (2) "AIB does not set the parameters for AIBI inspections," and, instead, "AIBI writes and publishes its own food safety audit standards"; and (3) "AIBI-not AIB-provides all inspection protocol and field training for AIBI's food safety auditors." Klover Decl., ¶¶ 3, 5, 9-10. Klover's sworn statements thus demonstrate that AIB and AIBI are separate and distinct corporate entities, and that AIB has not, in fact, controlled the day-to-day inspections or other business operations of its subsidiary. As this evidence is sufficient to sustain AIB's burden of refuting Plaintiff's jurisdictional allegations, the burden shifts back to Plaintiff to put forth competent evidence in support of the Court exercising personal jurisdiction over AIB.

A careful review of Plaintiff's briefing and the attached exhibits reveals that Plaintiff has failed to meet that burden. Significantly, Plaintiff has neglected to include a single affidavit or sworn declaration in support of his position. Rather, Plaintiff's exhibits consist entirely of unauthenticated copies of documents and screenshots or printouts of Web sites, many of which are undated and unverified. See Dkt. No. 55, Exs. A-I. Particularly given the evolving nature of Web sites, Plaintiff's failure to provide any information in the exhibits or an accompanying affidavit as to who created or obtained these

materials—and where, when, and how they did so—precludes the

Court from evaluating the reliability of this evidence. As it

is Plaintiff's duty to overcome Defendant's showing with

"affidavits or other competent proof," see Polski Linie

Oceaniczne, 795 F.2d at 972 (emphasis added) (quoting Bloom, 519

F. Supp. at 1168), the Court cannot rely upon these

unauthenticated exhibits as evidence in deciding the present

jurisdictional issue, see Fed. R. Evid. 901(a) ("To satisfy the

requirement of authenticating or identifying an item of

evidence, the proponent must produce evidence sufficient to

support a finding that the item is what the proponent claims it

is."); see, e.g., Hill v. Capital One Bank (USA), N.A., No. 14-

CV-6236, 2015 WL 468878, at *5 (N.D. Ill. Feb. 3, 2015)

(declining to consider the plaintiffs' Web site screenshots and

printouts as competent proof of jurisdiction, because they

"ha[d] not submitted an affidavit or declaration attesting to

the authenticity of these exhibits or the details as to when,

where, and how such images were obtained"); ArrivalStar S.A. v.

Axis Glob. Logistics, No. 11-80585-CIV, 2012 WL 488192, at *4

(S.D. Fla. Feb. 14, 2012) (same); see also United Techs. Corp.

v. Mazer, 556 F.3d 1260, 1278 (11th Cir. 2009) (upholding the

lower court's finding that statements constituting inadmissible

hearsay could not be considered in ruling on a 12(b)(2) motion).

Because the only evidence before the Court is thus the Klover

AO 72A
(Rev. 8/82)

Declaration provided by AIB, Plaintiff has failed to carry his burden of establishing a prima facie case of jurisdiction over the nonresident company.

Nevertheless, the Court notes that even if it were to accept the authenticity of Plaintiff's exhibits, Plaintiff still would not meet his burden. Certain of Plaintiff's exhibits would be inadmissible on grounds that they are wholly irrelevant to the personal-jurisdiction inquiry because they do not relate to the time period leading up to Plaintiff's service of the Complaint in this case in 2009. See Dkt. No. 55, Ex. A (AIB and AIBI's registered agents and principal places of business on November 25, 2015); id. at Ex. B (BISSC's "About" page from an unidentified point in time); id. at Ex. G (AIBI's 2016 seminar schedule, an article in AIB Update's March/April 2013 issue, and AIBI's undated "FS 360 Food Safety Evaluation"); id. at Ex. H (Food Bank of Northeast Georgia's 2014 Annual Report); see also Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC, 60 F. Supp. 3d 21, 30 (D.D.C. 2014) (collecting cases that have "uniformly held" that "jurisdiction is to be determined by examining the conduct of the defendants as of the time of service of the complaint"); Fed. R. Evid. 401 (relevance). Additionally, at least three of Plaintiff's exhibits would be excluded on the basis that they contain inadmissible hearsay. See Dkt. No. 55, Ex. D (American Society of Baking Web site);

AO 72A
(Rev. 8/82)

id. at Ex. H (Food Bank of Northeast Georgia's 2014 Annual
Report); id. at Ex. I (Dawn Food Products, Inc. online press
release); see also Fed. R. Civ. P. 801-02 (rule against
hearsay).

The evidence that would remain—AIB's Annual Report filed
with the Kansas Secretary of State, AIBI's annual update on
bakingbusiness.com, and the AIBI Food Safety Audit Report for
PCA, dkt. no. 55, exs. C, E-F—would not support a prima facie
case of jurisdiction over AIB in this State. AIB's Annual
Report listing the company as owner of both AIBI and BISSC, id.
at ex. C, would do nothing more than establish a parent-
subsidiary relationship between AIB and AIBI. Plaintiff seeks
to introduce this exhibit for the purpose of contrasting it with
BISSC's Web site describing BISSC as a "wholly-owned subsidiary
of AIB International," id. at ex. B, but given that the BISSC
Web site would be inadmissible for the reasons discussed above,
this exhibit would not contribute to creating such an inference.
While AIBI's annual update on bakingbusiness.com does contain
one instance in which AIB and AIBI are referred to
interchangeably—using "AIB International 2009" as the heading
and "AIB Annual Update" as the subheading, id. at ex. E—it is
unclear whether these headings were supplied by
bakingbusiness.com or were part of the update provided by the
AIBI representative. In any event, the report goes on to refer

AO 72A
(Rev. 8/82)

only to AIBI in discussing the company's performance and plans to improve its inspection procedures, see id., and, as such, the exhibit as a whole would not indicate that AIB exercised complete control over the business of its subsidiary. See Heidbrink v. ThinkDirect Mktg. Grp., Inc., No. 8:14-CV-1232-T-30AEP, 2014 WL 3585698, at *3 (M.D. Fla. July 21, 2014) ("[C]ourts do not consider statements in . . . annual reports . . . reliable evidence that the parent exercises 'operational control' necessary to confer personal jurisdiction." (citing Dev. Corp. of Palm Beach v. WBC Constr., LLC, 925 So.2d 1156, 1163 (Fla. Ct. App. 2006); and Cross Country Home Servs., Inc. v. Home Serv. USA Corp., 08-61456-CIV, 2010 WL 55439, at *4 (S.D. Fla. Jan. 6, 2010))).

Nor would the references to the AIB Consolidated Standards for Food Safety in the AIBI annual update and the AIBI Food Safety Audit Report for PCA, see dkt. no. 55, exs. E-F, establish such control. The title used for the food-safety standards is not conclusive of their authorship, and, as a result, this evidence does not necessarily conflict with Klover's testimony that "AIBI writes and publishes its own food safety audit standards," Klover decl., ¶ 9. Even if the title were indicative of authorship, such that Plaintiff's exhibits would contradict the Klover Declaration and require an inference in Plaintiff's favor, Plaintiff still would fail to show how

AO 72A
(Rev. 8/82)

AIBI's use of food-safety standards published by AIB goes beyond mere procedural guidance and amounts to complete operational control over the business. See Drumm Corp., 755 S.E.2d at 854 (parent corporation's "monitoring of the subsidiary's performance" and "articulation of general policies and procedures" do not constitute doing business through the subsidiary (quoting Unocal Corp., 248 F.3d at 926)).

In sum, because AIB has met its burden of showing a lack of minimum contacts with Georgia, and Plaintiff has not presented any competent evidence to the contrary, Plaintiff has failed to establish any of the factual prerequisites needed to support the exercise of jurisdiction over AIB under Georgia's long-arm statute. As asserting jurisdiction over this Defendant would not be appropriate under the long-arm statute, the Court need not proceed to the constitutional due-process analysis. Plaintiff's claims against AIB must be dismissed for lack of personal jurisdiction, and AIB's Motion in this regard is **GRANTED**.

## II. AIBI and Hatfield's Motion Regarding the PCA Settlement Procedures (Dkt. No. 50)

AIBI and Hatfield seek relief based on Plaintiff's decision not to participate in the PCA bankruptcy litigation that resulted in PCA paying out $12,000,000 to eligible claimants.

Dkt. No. 51, pp. 1-2.[1]  In particular, the movants assert that they are entitled to judgment on the pleadings in their favor, because Plaintiff's failure to pursue the settlement with PCA resulted in a waiver of his right to bring any claims against them for the same injuries.  Id. at pp. 3, 10-14. Alternatively, AIBI and Hatfield request partial judgment on the pleadings on the issue of mitigation of damages, asking that the Court find that Plaintiff's nonparticipation in the settlement procedures constituted a failure to mitigate damages and warrants an order reducing or eliminating any potential damages award accordingly.  Id. at pp. 14-19.  Finally, and in the alternative, these Defendants request a denial of class certification at this time, on the basis that Plaintiff's absence from the PCA settlement renders him an inadequate representative of the proposed class.  Id. at pp. 19-22.

Plaintiff opposes AIBI and Hatfield's Motion in its entirety.  Dkt. No. 56.  He emphasizes that the movants do not, and cannot, cite to any case law supporting the proposition that a claimant waives his rights or fails to mitigate his damages by suing one joint tortfeasor over another.  Id. at pp. 4, 7-10. Additionally, Plaintiff asserts that a ruling on class certification would be premature at this time, and that, in any

---

[1]  In support of their Motion, AIBI and Hatfield have submitted several of the key documents and court orders filed in the bankruptcy litigation.  See Dkt. No. 51, Exs. A-M.

AO 72A
(Rev. 8/82)

event, his decision not to participate in the PCA settlement procedures is characteristic of the majority of the proposed class members. Id. at pp. 11-14.

### A. Request for Judgment on the Pleadings

A motion for judgment on the pleadings is to be filed "[a]fter the pleadings are closed," Fed. R. Civ. P. 12(c), and "[p]leadings are considered 'closed' when all defendants have filed answers to the complaint," Jordan v. Def. Fin. & Accounting Servs., No. 8:14-CV-958-T-33TGW, 2014 WL 3887748, at *1 (M.D. Fla. Aug. 7, 2014) (alteration in original) (quoting Gelsomino v. Horizon Unlimited, Inc., No. 07-80697, 2008 U.S. Dist. LEXIS 68907, at *6 n.3, 2008 WL 4194842 (S.D. Fla. Sept. 9, 2008)). As AIBI and Hatfield filed their Motion at a time when AIB had not yet filed an answer to the Complaint, and instead had submitted a Motion to Dismiss that remained pending, dkt. no. 8, their Motion was premature. Nevertheless, given the Court's ruling on AIB's Motion to Dismiss in Part I, it would serve no useful purpose to require AIBI and Hatfield to refile their Motion following the dismissal of that Defendant. The Court instead will construe AIBI and Hatfield's Motion as a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1030 (W.D. Tenn. 2003) (construing a prematurely filed motion for judgment on the pleadings as a Rule 12(b)(6)

motion and noting that "[s]uch a motion applies the same analysis as a motion for judgment on the pleadings but is permissible prior to the filing of a defendant's answer").

However, under either characterization, AIBI and Hatfield's Motion is due to be denied. Importantly, the Defendants do not challenge the legal sufficiency of Plaintiff's claims for relief set forth in the Complaint. Rather, they rely on court documents from the PCA bankruptcy proceedings to argue that Plaintiff cannot sustain a claim against them because he either waived his right to do so or failed to mitigate his damages by not pursuing any remedy against PCA in that case. Dkt. Nos. 50-51. While the bankruptcy court documents are subject to judicial notice at this stage, this evidence does not support a dismissal of Plaintiff's claims against AIBI and Hatfield.

### 1. Waiver

Plaintiff's decision not to participate in the settlement procedures with PCA is simply not the type of conduct that would result in a waiver of his claims against AIBI and Hatfield under Georgia law. Georgia courts define waiver as the "voluntary relinquishment of a known right," which "may be established by express statements or implied by conduct." Mullis v. Bibb Cty., 669 S.E.2d 716, 720 (Ga. Ct. App. 2008) (quoting Kennestone Hosp. v. Hopson, 538 S.E.2d 742, 742 (Ga. 2000)). A valid waiver "operates to preclude a subsequent assertion of the right

AO 72A
(Rev. 8/82)

waived or any claim based thereon." <u>Mauldin v. Weinstock</u>, 411
S.E.2d 370, 374 (Ga. Ct. App. 1991) (emphasis omitted) (quoting
28 Am. Jur. 2d <u>Estoppel & Waiver</u> § 30). "While normally the
question of waiver is a matter for the jury, where . . . the
facts and circumstances essential to the waiver issue are
clearly established waiver becomes a question of law." <u>Id.</u>
(quoting 28 Am. Jur. 2d <u>Estoppel & Waiver</u> § 174).

AIBI and Hatfield fail to cite, and the Court is unable to
find, any case law finding a waiver of rights where a plaintiff
pursues a remedy against one joint tortfeasor over another.[2] The
movants instead rely on cases that they contend support the more
general proposition that "failing to assert a right when a
convenient opportunity arises, and then later attempting to
assert that right in a different manner constitutes waiver."
Dkt. No. 59, p. 4. However, the cases cited by AIBI and
Hatfield are entirely distinguishable from the circumstances
here, as the plaintiffs in those cases later attempted to
exercise their rights in a different manner against the same
defendant or defendants, while this case involves an attempt to
do so against entirely different defendants altogether (i.e.,

---

[2] AIBI and Hatfield deny that they are arguing for a waiver based on a
plaintiff's decision to sue less than all conceivable tortfeasors and,
instead, insist that they are requesting a ruling that a waiver occurs
where a plaintiff has not "tak[en] the opportunity to receive
compensation from a tortfeasor <u>offering</u> to pay." Dkt. No. 59, p. 4.
Regardless of how these Defendants frame their request, they fail to
offer legal and factual support for finding that any waiver has
occurred under these facts.

joint tortfeasors), see dkt. no. 51, pp. 10–11 (citing In re Wolfson, 56 F.3d 52, 53 (11th Cir. 1995) (dealing with a secured creditor's waiver of its right to assert that its debt was nondischargeable in the debtor's bankruptcy); and Hyre v. Denise, 449 S.E.2d 120, 124 (Ga. Ct. App. 1994) (involving a debtor's waiver of her right to object to a creditor's foreclosure on her property)).

Moreover, applying the waiver doctrine under these circumstances would be contrary to the well-settled principle that a tort claimant may choose which of several joint tortfeasors he will sue. See Temple v. Synthes Corp., 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); City of Coll. Park v. Fortenberry, 609 S.E.2d 763, 765 (Ga. Ct. App. 2005) ("It is well established, however, that . . . a plaintiff has the right to elect which tortfeasor he will proceed against."); see also Smith v. Pasqua, 972 N.Y.S.2d 98, 98 (App. Div. 2d Dep't 2013) ("[A] plaintiff may proceed against any or all joint tortfeasors, and a judgment for or against one tortfeasor does not operate as a merger or bar of a claim against other tortfeasors."). While AIBI and Hatfield emphasize the convenient nature and favorable terms of the PCA settlement, dkt. no. 51, pp. 12–13, there is no legal support for limiting a claimant's avenues of relief to only the one that

is most advantageous to him, much less the one that is preferred by the alleged tortfeasors. Nor did anything in the PCA settlement procedures require Plaintiff to pursue that method of relief, as the bankruptcy court did not issue an order requiring that all salmonella victims participate in the settlement, but rather required only that any claimants choosing to utilize those procedures agree to release any claims against certain entities upon accepting the settlement. See id. at Ex. M, p. 2.

### 2. Failure to Mitigate

Equally unavailing is AIBI and Hatfield's attempt to construe Plaintiff's nonparticipation in the PCA settlement procedures as a failure to mitigate barring or reducing the amount of his claims in this case. In a negligence action under Georgia law, a plaintiff "must mitigate his damages as far as is practicable by the use of ordinary care and diligence." O.C.G.A. § 51-12-11. Where a plaintiff does not exercise ordinary care, his recovery of damages is "limited to those he would have suffered had damages been properly mitigated." Wachovia Bank of Ga., N.A. v. Namik, 620 S.E.2d 470, 473 (Ga. Ct. App. 2005) (citing Crowley v. Tr. Co. Bank, 466 S.E.2d 24, 24 (Ga. Ct. App. 1995)). As a result, "when a tort victim fails to take reasonable steps to mitigate his damages, those damages are either cut down or eliminated altogether." Pattee v. Ga.

Ports Auth., 512 F. Supp. 2d 1372, 1381 (S.D. Ga. 2007) (quoting Lawson v. Trowbridge, 153 F.3d 368, 377 (7th Cir. 1998)).

In their briefing, AIBI and Hatfield fail to refer to any legal authority for the proposition that a tort claimant fails to mitigate his damages by not seeking a settlement with one of several joint tortfeasors. While the Defendants instead contend that "[f]ailing to capitalize on an opportunity to collect or limit damage[s] constitutes failure to mitigate, . . . [which] can serve as a complete bar to recovery," dkt. no. 51, p. 15, they again glean this very general assertion from case law that is wholly inapplicable to these facts, see id. (citing Messer v. E.F. Hutton & Co., 833 F.2d 909, 922 (11th Cir. 1987) (investor plaintiff failed to mitigate his damages by not acting to remove a straddle on his brokerage account until days after the brokerage firm informed him of the same), amended in part on reh'g, 847 F.2d 673 (11th Cir. 1988); Eazor Exp., Inc. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 376 F. Supp. 841, 850 (W.D. Pa. 1974) (corporate plaintiff could not recover all of its lost earnings resulting from a labor strike because it failed to mitigate its damages by refusing to make conciliatory efforts and instead taking steps that further frustrated employees and prolonged the strike); Cmty. Fed. Sav. & Loan Ass'n v. Foster Developers, Inc., 348 S.E.2d 326, 331 (Ga. Ct. App. 1986) (plaintiff failed to

mitigate its damages by not making adequate efforts to collect on a promissory note from the primary debtor and waiting nine months after learning of the primary debtor's insolvency to take any action against the secondarily liable party)).

As with waiver, a rule that a plaintiff fails to mitigate his damages by suing one joint tortfeasor over another would be at odds with a tort claimant's basic right to choose how to proceed against joint tortfeasors. And, contrary to AIBI and Hatfield's urging, see id. at pp. 15-19, there is no support for finding that a plaintiff's freedom in this regard must be exercised in favor of the option that appears to be most convenient or fair to him or the tortfeasors. Furthermore, it would be illogical to apply mitigation under these facts, because, unlike the cases in which the mitigation doctrine normally applies, Plaintiff's decision as to whom he would sue to recover damages could not have contributed in any way to the amount of those damages. In other words, as Plaintiff describes it, "[his] damages were caused by a salmonella infection," and "[he] did not worsen his illness by suing Defendants instead of PCA" or cause or contribute to his injuries by doing so, dkt. no. 56, p. 9. Cf. Harvey v. J.H. Harvey Co., 568 S.E.2d 553, 558 (Ga. Ct. App. 2002) (failure to mitigate damages by not looking for a new job after an allegedly wrongful termination), aff'd, 582 S.E.2d 88 (Ga. 2003); Butler v. Anderson, 295 S.E.2d

216, 217 (Ga. Ct. App. 1982) (failure to mitigate damages by not following a doctor's instructions for improving the alleged injuries); Rosenthal v. O'Neal, 132 S.E.2d 150, 152 (Ga. Ct. App. 1963) (failure to mitigate damages by not seeking medical treatment for the alleged injuries). AIBI and Hatfield's Motion is, therefore, **DENIED** to the extent that it seeks judgment in its favor on Plaintiff's claims on grounds of waiver and mitigation.[3]

### B. Request for a Denial of Class Certification

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). In the Eleventh Circuit, "a defendant, as well as a plaintiff, may move for a determination of class certification," and may do so at the pleadings stage. Lawson v. Life of the S. Ins. Co., 286 F.R.D. 689, 694 (M.D. Ga. 2012) (citing Foxx v. Ocwen Loan Servicing, LLC, No. 8:11-CV-1766-T-17EAK, 2012 WL 2048252, at *9 (M.D. Fla. June 6, 2012) (granting a motion to dismiss the plaintiff's class allegations for failure to comply with the federal and local rules regarding the pleading of certain details about the proposed class); and Lumpkin v. E.I. Du Pont de Nemours & Co., 161 F.R.D. 480, 482

---

[3]  AIBI and Hatfield's alternative request for an order reducing any potential damages award based on the same failure-to-mitigate argument fails for the reasons discussed here and is, therefore, **DENIED**.

AO 72A
(Rev. 8/82)

(M.D. Ga. 1995) (granting a motion to strike the plaintiff's class allegations because they failed plead the numerosity, commonality, typicality, and adequacy of representation requirements or show that further discovery would substantiate a class action)). A district court enjoys broad discretion in ruling on a motion concerning class certification. Id. at 695 (citing Lumpkin, 161 F.R.D. at 481).

Significantly, dismissal at the pleading stage "is an extreme remedy appropriate only where a defendant demonstrates 'from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove.'" Id. (quoting Oginski v. Paragon Properties of Costa Rica, LLC, Nos. 10-21720-CIV, 11 -60647-CIV, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9 2011)). A court will consider the question of certification prior to the discovery phase only if the issues are "plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." Id. (quoting Lumpkin, 161 F.R.D. at 481). Accordingly, in many cases, courts have found that a defendant's motion challenging class certification is premature when the plaintiff has not yet moved to certify the class. See McCabe v. Daimler AG, No. 1:12-CV-2494-TCB, 2013 WL 6283657, at *1 (N.D. Ga. Dec. 2, 2013) (citing Rosales v. FitFlop USA, LLC, 882 F.

AO 72A
(Rev. 8/82)

Supp. 2d 1168, 1179 (S.D. Cal. 2012) (class issues should be reserved for a motion by the plaintiff so long as the complaint addresses all of the requisite elements); Korman v. Walking Co., 503 F. Supp. 2d 755, 763 (E.D. Pa. 2007) ("There is no good reason for this case not to proceed down the normal path, i.e., with the Court setting a deadline for Plaintiff to file a motion for class certification and the parties litigating the propriety of maintaining the action as a class under the traditional Rule 23(c) rubric."); Abdallah v. Coca-Cola Co., No. 1:98-cv-3679-RWS, 1999 WL 527835, at *1 (N.D. Ga. July 16, 1999) ("[T]he shape and form of a class action evolves only through the process of discovery, and it is premature to [rule on class certification] before the claim has taken form.").

AIBI and Hatfield's Motion with respect to class certification is premature. Notably, the movants do not challenge the sufficiency of Plaintiff's pleading of the class allegations in the Complaint, but rather assert that Plaintiff's failure to participate in the PCA settlement procedures renders him an inadequate representative of the class. Dkt. No. 51, pp. 19-22. However, Plaintiff has not yet filed a motion to certify the class, and it is not "plain enough" from the Complaint that Plaintiff's interests are not sufficiently representative of the other putative class members, see Lawson, 286 F.R.D. at 694. As the parties recognized in their Rule 26(f) Report, this case

AO 72A
(Rev. 8/82)

will require extensive discovery regarding the members of the proposed class before the parties are able to fully brief, and the Court is in a position to decide, the issue of class certification. This portion of AIBI and Hatfield's Motion is thus **DISMISSED as premature** at this time.

### CONCLUSION

Based on the foregoing, AIB's Motion to Dismiss (dkt. no. 48) is **GRANTED**. Plaintiff's claims against AIB are hereby **DISMISSED** for lack of personal jurisdiction.

AIBI and Hatfield's Motion Regarding the PCA Settlement Procedures (dkt. no. 50) is **DENIED in part** and **DISMISSED in part as premature**: it is **DENIED** as to its requests for judgment on the pleadings on grounds of waiver and mitigation and, alternatively, an order reducing any potential damages award, and it is **DISMISSED as premature** as to its challenge to class certification at this time.

**SO ORDERED**, this 9TH day of August, 2016.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA